**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roman GARCIA, Defendant–Appellant.**

**No. 01–3306.**

United States Court of Appeals,
Sixth Circuit.

Jan. 7, 2003.

Before KEITH, KRUPANSKY, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Roman Hernandez Garcia, appeals from the judgment of conviction and sentence entered by the district court on March 20, 2001, following Defendant's guilty plea conviction for one count of conspiracy to distribute over 100 grams of heroin in violation of 21 U.S.C. § 846, for which Defendant was sentenced to a term of sixty months' imprisonment and five years' supervised release.

On appeal, Defendant claims that the district court erred in refusing to apply the safety valve provision of USSG § 5C1.2 when imposing sentence. For the reasons set forth below, we AFFIRM Defendant's sentence.

### STATEMENT OF FACTS

#### Procedural History

On July 13, 2000, a federal grand jury sitting in the Southern District of Ohio, returned a twenty-nine count indictment charging Defendant and several other individuals with various criminal offenses in connection with a heroin drug trafficking scheme. Defendant was charged in Counts 1, 27, and 28 of the indictment, and thereafter pleaded guilty to Count 1 which charged Defendant with conspiracy to distribute over 100 grams of heroin in violation of 21 U.S.C. § 846 and § 841(b)(B)(i).

On March 13, 2001, a sentencing hearing was held at which time the district court addressed two objections made by Defendant to the presentence investigation report ("PSR"). One of the objections concerned a two-point reduction to Defendant's base offense level for Defendant's minor role in the offense pursuant to USSG § 3B1.2. The other objection concerned a two-point "safety valve" reduc-

tion in Defendant's offense level pursuant to USSG § 5C1.2. The district court allowed for the two-point reduction under USSG § 3B1.2, but denied the "safety valve" reduction under USSG § 5C1.2. Defendant was sentenced to sixty months' imprisonment to be followed by five years' supervised release. Defendant filed this timely appeal challenging the district court's refusal to apply the "safety valve" reduction of USSG § 5C1.2 at sentencing.

### Facts

In January of 2000, the Columbus office of the United States Drug Enforcement Administration ("DEA") learned that a Mexican-based heroin trafficking organization set up in California had established two different cells of operation in Ohio. One of the cells was located in Columbus, Ohio, and the other cell was located in Steubenville, Ohio. DEA Special Agent Michael Flynn was assigned to the case and during the course of Agent Flynn's investigation, he and other DEA agents observed over twenty heroin transactions involving Defendant and other individuals named in the indictment.

The DEA in Columbus learned that Defendant and Henry Ramirez–Becerra, used their apartment located at 8707 Oak Village Boulevard as a base of operations for the Columbus area heroin drug dealing. Agent Flynn testified that through surveillance, it was established that Defendant and Becerra had a pattern of making heroin deliveries throughout the Columbus metropolitan area near convenience stores, public gas stations, and residential neighborhoods. Flynn further testified that the DEA learned that Becerra had three vehicles registered in his name, and that Defendant and Becerra would rotate these vehicles when making their heroin deliveries to avoid detection. The DEA also learned that numerous telephone calls were being made from the Oak Village Boulevard location to multiple pay telephones around the Columbus metropolitan area, with most of pay phones located at gas stations and convenience stores.

Through a confidential source, the DEA in Columbus arranged for controlled buys from Defendant and Becerra on May 12, May 24, and June 6, 2000, at which time approximately 0.722 net grams of black tar heroin was sold for $250.

On June 15, 2000, as a result of a nationwide investigation into the Mexican heroin trafficking organization, numerous arrests were made around the country, including arrests in Columbus and Steubenville, Ohio. Defendant's apartment was searched on June 15, 2000 as part of the nationwide sweep, and the result of the search revealed 13.6 grams of heroin, approximately $33,700 in cash, other drug paraphernalia, cash money transfer documents, and four vehicles. Defendant was arrested following the search of the apartment. He waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and admitted to his involvement in the black tar heroin organization. The heroin recovered from Defendant's apartment was later tested and found to be 65% pure.

Defendant pleaded guilty to conspiracy to distribute over 100 grams of heroin in violation of 21 U.S.C. § 846. At the sentencing hearing, Defendant argued that the "safety valve" provision of USSG § 5C1.2 should be applied to his case. The government disagreed claiming that Defendant failed to provide complete and accurate information regarding his role in the offense as well as the other individual's roles in the enterprise. The district court agreed with the government and denied the § 5C1.2 reduction.

### DISCUSSION

#### Standard of Review

"The trial court's refusal to apply § 5C1.2 is a factual finding which [this

Court] review[s] for clear error." *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir.2001).

The purpose of § 5C1.2 is to reduce some of the harsh inflexibility of mandatory minimum sentences by enabling courts to account more fully for mitigating factors when sentencing those defendants who are considered the least culpable participants in drug trafficking cases. *United States v. Maduka*, 104 F.3d 891, 893 (6th Cir.1997) (citing *United States v. Adu*, 82 F.3d 119, 121 (6th Cir.1996)). Sentencing Guideline § 5C1.2 was enacted to reflect verbatim the requirements set forth in 18 U.S.C. §§ 3553(F)(1)-(5), and allows a court to impose sentences below the statutory minimum penalty in those instances when a defendant meets five specific criteria. *Salgado*, 250 F.3d at 459 A defendant seeking the application of § 5C1.2 bears the burden of proving by a preponderance of the evidence that he is entitled to the "safety valve" reduction. *Id.* (citing *Adu*, 82 F.3d at 123–24).

Of the five criteria necessary for the reduction to apply, only the fifth criterion is at issue here, and that criterion specifies as follows:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course or conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information shall not preclude a determination by the court that the defendant has complied with this requirement.

USSG § 5C1.2(5). This Court has held that in order to meet the requirements of § 5C1.2(5), "[t]he defendant is required to provide complete information regarding not only the offense of conviction, but also

any relevant conduct, including disclosure of information regarding the participation of other people in the offense." *Salgado*, 250 F.3d at 459 (citing *Maduka*, 104 F.3d at 894). This Court has further held that "[w]here the government challenges a defendant's claim of complete and timely disclosure and the defendant does not produce evidence that demonstrates such disclosure, a district court's denial of a request to apply … § 5C1.2(5) is not clearly erroneous." *Id.* at 460 (citing *Adu*, 82 F.3d at 125).

In the matter at hand, the prosecutor argued against the application of § 5C1.2 to Defendant's case, stating as follows:

> The defendant was interviewed on September 22, of last year, 2000. During that interview he was, in the opinion of the agents, untruthful and evasive. At times during the interview the agents had to walk out because the defendant was not providing information that he knew about the conspiracy, he was not providing names, he would not give names about how he got here, how he got established. He was not truthful about the length of time that he was here. Originally he said he was only here one year. Then when confronted with a lease agreement, he admitted that he may have been here longer. In fact, he was here two years.

> He never told the agents about the amounts of heroin that he was distributing or receiving through the conspiracy in the Lewis Center location. He did not tell us about supplying Steubenville and co-conspirators with heroin, and he never even told us about the other person living in the Lewis Center location with him, that being Henry Becerra, Henry Ramirez–Becerra.

> All in all, he did not provide us any information, he did not give us all of the information concerning the conspiracy,

and the government does not feel that he is deserving of the safety valve. (J.A. at 116–17; sentencing hearing.) The prosecutor also made known to the court that in paragraph sixty-seven of Defendant's PSR, it states that Defendant failed to provide information as to the identity of the individuals who sent the two mules with heroin to Defendant's apartment. The prosecutor contended that on this basis alone, Defendant was not entitled to the benefit of the safety valve provision.

In response to this argument, defense counsel admitted that there were "discrepancies" in the statements initially made by Defendant to the agents involved, but claimed that Defendant eventually clarified the statements and provided the agents with the information known to him. When asked by the court as to whether the "discrepancies" were due to a memory failure, defense counsel replied that it was likely due to the fact that Defendant, being from Mexico, did not understand our law enforcement system, likening it to that of Mexico. Defense counsel further admitted, however, that Defendant failed to provide the government with "a lot of names . . . and a lot of particulars, other than what he was doing here in central Ohio." (J.A. at 118.)

Based on the above, the district court found that Defendant failed to meet the fifth criterion of § 5C1.2, and therefore denied Defendant's request to apply the safety valve provision to his sentence. The district court did not clearly err in this regard. As noted, this Court has found that "[w]here the government challenges a defendant's claim of complete and timely disclosure and the defendant does not produce evidence that demonstrates such disclosure, a district court's denial of a request to apply . . . § 5C1.2(5) is not clearly erroneous." *Salgado,* 250 F.3d at 460. Defendant in this case failed to come

forward with evidence of disclosure, particularly that of the individuals who sent the mules with the heroin to Defendant's apartment as stated in paragraph sixty-seven of the PSR, and therefore the district court's finding that Defendant failed to meet the requirements of § 5C1.2(5) is not clearly erroneous. *Id.*

Although Defendant argues on appeal that any discrepancies that may have existed in his statement to the agents were cured at the time of sentencing, and that he was truthful in providing information to the agents. Defendant's argument falls short of the mark. In this circuit, it is clear that in order to meet the requirements of § 5C1.2(5), "[t]he defendant is required to provide complete information regarding not only the offense of conviction, but also any relevant conduct, including disclosure of information regarding the participation of other people in the offense." *Salgado,* 250 F.3d at 459 (citing *Maduka,* 104 F.3d at 894). As noted, paragraph sixty-seven of Defendant's PSR, Defendant failed to provide complete information to the government, and he has not come forward with evidence to indicate otherwise.

## CONCLUSION

The district court's finding that Defendant failed to meet the requirement of § 5C1.2(5) was not clearly erroneous and, as a result, the district court did not err in refusing to apply the safety valve provision of § 5C1.2 when sentencing Defendant. We therefore AFFIRM Defendant's sentence.